IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DISH TECHNOLOGIES L.L.C. and<br>SLING TV L.L.C., | ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. _____ |
| v. | ) | |
| | ) | **DEMAND FOR JURY TRIAL** |
| UNIVISION COMMUNICATIONS INC., | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs DISH Technologies L.L.C. and Sling TV L.L.C. (collectively, "DISH")

allege against Defendant Univision Communications Inc. ("Univision") as follows:

## PARTIES

1.     Plaintiff DISH Technologies L.L.C. is a limited liability company

organized and existing under the laws of the State of Colorado, with its principal place of

business at 9601 South Meridian Boulevard, Englewood, Colorado 80112.   It provides

innovation and technology services and products to, among others, the DISH Network® satellite

pay TV service operated by DISH Network L.L.C. and the Sling TV® streaming pay TV service

operated by Sling TV L.L.C.

2.     Plaintiff Sling TV L.L.C. is a limited liability company organized and

existing under the laws of the State of Colorado, with its principal place of business at 9601

South Meridian Boulevard, Englewood, Colorado 80112.  It operates the Sling TV service.

3.     On information and belief, Defendant Univision Communications Inc. is a

corporation existing under the laws of the State of Delaware, with its principal place of business

at 605 Third Avenue, New York, NY 10158.  Univision has appointed The Corporation Trust

Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801, as its agent for service of process.

## JURISDICTION AND VENUE

4.  DISH asserts a claim for patent infringement against Univision arising under the patent laws of the United States, Title 35 of the United States Code.  Accordingly, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.  This Court has personal jurisdiction over Univision for at least the following reasons:  (1) Univision is incorporated in Delaware; (2) Univision has committed acts of patent infringement and contributed to and induced acts of patent infringement by others in this District;  (3)Univision regularly does business or solicits business in this District; (4) Univision engages in other persistent courses of conduct and derives substantial revenue by offering and providing  infringing products and services in this District; and (5) Univision has purposefully established substantial, systematic, and continuous contacts with this District and should reasonably expect to be haled into court here by its offering and providing of infringing products and services in this District.

6.  Venue is proper in the District of Delaware under at least 28 §§ 1391(b), (c) and/or 1400(b).  Univision is incorporated in Delaware.  Additionally, the acts and transactions constituting the violations alleged herein occurred in part in this judicial district and Univision transacts business in this judicial district.

## THE ABS PATENTS

7.  On October 19, 2010, the United States Patent and Trademark Office ("PTO") duly and lawfully issued United States Patent No. 7,818,444 ("the '444 Patent"), entitled "Apparatus, system, and method for multi-bitrate content streaming."  A true and correct

copy of the '444 Patent is attached as Exhibit A.  All rights, title, and interest in and to the '444 Patent have been assigned to DISH Technologies L.L.C., which is the sole owner of the '444 Patent.

8.      On March 19, 2013, the PTO duly and lawfully issued United States Patent No. 8,402,156 ("the '156 Patent"), entitled "Apparatus, system, and method for multi-bitrate content streaming."  A true and correct copy of the '156 Patent is attached as Exhibit B.  All rights, title, and interest in and to the '156 Patent have been assigned to DISH Technologies L.L.C., which is the sole owner of the '156 Patent.

9.      On June 30, 2015, the PTO duly and lawfully issued United States Patent No. 9,071,668 ("the '668 Patent"), entitled "Apparatus, system, and method for multi-bitrate content streaming."  A true and correct copy of the '668 Patent is attached as Exhibit C.  All rights, title, and interest in and to the '668 Patent have been assigned to DISH Technologies L.L.C., which is the sole owner of the '668 Patent.

10.      On August 2, 2016, the PTO duly and lawfully issued United States Patent No. 9,407,564 ("the '564 Patent"), entitled "Apparatus, system, and method for adaptive-rate shifting of streaming content."  A true and correct copy of the '564 Patent is attached as Exhibit D.  All rights, title, and interest in and to the '564 Patent have been assigned to DISH Technologies L.L.C., which is the sole owner of the '564 Patent.

11.      DISH Technologies L.L.C. has entered into an exclusive license with Sling TV L.L.C. and assigned all substantial rights in the above identified patents to Sling TV L.L.C., including the right to sue thereon.

12.      The claimed inventions in these patents are directed to various novel aspects and improvements to adaptive bitrate streaming ("ABS") technology.  The '444, '156,

'668, and '564 Patents (collectively, "the ABS Patents") are currently in full force and effect. The patent application underlying the '564 Patent is a continuation of U.S. Patent Application No. 11/116,783. Each of the '444, '156, and '668 Patents issued from patent applications that are continuations-in-part of U.S. Patent Application No. 11/116,783.

## BACKGROUND OF THE DISPUTE

## MOVE IS A PIONEER OF ADAPTIVE BITRATE TECHNOLOGY

13. MOVE Networks, Inc. ("MOVE") was the original owner of the ABS Patents. Originally, Drew Major founded a company called XLon (renamed MOVE in 2006), which, in 2003, invented HTTP-based Adaptive Bitrate to improve the quality of streamed video content over the Internet. While at MOVE, inventors David Brueck, Mark Hurst, and Drew Major (collectively, "the ABS Inventors") observed that the Internet was fast becoming a preferred method for distributing live and recorded video to individuals even though content delivery over the Internet at the time was notoriously unreliable, expensive and inferior in quality compared to cable and satellite delivered content. To access video content online, users were left with two mediocre choices: (1) waiting for their content to download (which did not support immediate viewing of live content and often required the user to select the quality desired: LOW, MEDIUM or HIGH, which in turn determined how long the user had to wait before viewing); or (2) streaming live or recorded content, which often was unreliable (pausing to "buffer") or only worked at low-resolution.

14. The ABS Inventors knew that media streaming had not reached its full potential and that, through research and improvement, it was possible that streaming could rival the quality of cable and satellite delivered content. The current state-of-the-art was unacceptable prior to the inventions disclosed in the patents-in-suit. Often during playback, the streaming

technologies did a poor job selecting the video quality / resolution that the network bandwidth and reliability could support.  Most commercial systems, from companies like RealNetworks, Adobe, Microsoft, or Apple, were proprietary implementations based on public Internet standards (RTP/RTSP).  Common standards notwithstanding, the proprietary implementations were mutually incompatible.  They were expensive to deploy by the Content Delivery Networks ("CDNs") and required many servers to scale to a large number of viewers.  In addition, these technologies often required custom server architectures and routing IT configurations to penetrate Internet firewalls.  The ABS Inventors recognized these shortcomings as an opportunity and developed a better solution.

15.     The ABS Patents' specifications detail the need for improved data transport in content streaming.  Users will generally choose streaming over downloading because "they tend to want to see or hear the media files instantaneously."  *See, e.g.*, '668 Patent, Exhibit C, at col. 1, ll. 48–50.  Unfortunately for protocols at the time, "[s]treaming offers the advantage of immediate access to the content but currently sacrifices quality compared with downloading a file of the same content."  *See, e.g.*, *id.* col. 1, lines 51–53.  The ABS Inventors observed that "a need exists for an [invention] that alleviates the problems of reliability, efficiency, and latency" encountered in currently available content streaming systems.  *See, e.g.*, *id.* col. 2, ll. 39-41.

16.     To address these needs, the ABS Inventors came up with a novel solution: HTTP-based Adaptive Bitrate Streaming.  ABS segments the full content file into smaller units ("Streamlets") in multiple bitrates and delivers them over HTTP / TCP, the underlying protocols used for reliably transmitting data over the Internet.  The ABS Inventors' approach enables content delivery to adapt to the bandwidth available at any particular time, ensuring delivery of

the highest possible quality content throughout the course of the stream.  The playback client device continuously observes the quality of a user's network connection and adjusts the requested quality of the streamed content.  The other RTP/RTSP-based technologies used a client / server architecture, where the server determined the bitrate to send to the client.  The other technologies also did not segment the content, usually delivering it as a continuous stream of bits or as a single large file.  Segmenting the content allows the playback device to easily change bitrates.  The result is that today, MOVE's patented ABS technology allows Internet users to stream content from across the world in real time at the highest possible quality.

17.    The ABS Patents specifications describe how the MOVE inventors significantly improved the user viewing experience of streaming content data over a network: "[A] need exists for an apparatus, system, and method that alleviate the problems of reliability, efficiency, and latency [during data transport streaming over a network].  Additionally, such an apparatus, system, and method would offer instantaneous viewing along with the ability to fast forward, rewind, direct seek, and browse multiple streams."  *See, e.g.*, *id.* col. 2, ll. 37–43.

18.    One unconventional but fundamental improvement described in the ABS patents is the creation of sets of streamlets from the original large content file, where a plurality of streamlets in each set are aligned by starting time and duration (typically a few seconds) but have different bitrates.  Contiguous playback of the streamlets independently yields playback of the full content.  The common alignment of the streamlets in each set allows a playback device to select one quality of streamlet from a particular set, and, as needed to adjust for changing bandwidth resources, to select a different quality of streamlet from the subsequent set.  When the bandwidth of the user's network is constrained, the client can select a lower bitrate to maintain playback continuity instead of "buffering."  This eliminates the need for users to download the

full content file before beginning playback.  Segmenting the media into streamlets enables users to retrieve and enjoy content at the most appropriate bitrate possible as the media is streamed.  It is also well suited for live stream playback.

19.    Another non-routine and revolutionary improvement described in the ABS patents is that the client controls switching between different bitrates.  The benefits of using an intelligent client to make the decisions and switch between different bitrate streamlets are two-fold.  First, the client is in a better position to determine the appropriate streamlet by measuring the actual throughput of the network at its point of reception.  Second, moving the decision-making to the client effectively eliminates the need for a customized video server.  Instead a standard web server can be employed to host all the content's streamlets.  Streamlets are requested by a client using the standard HTTP/TCP protocol—the web standard upon which the Internet is built.  Custom IT configurations are unnecessary as the file requests operate on the same "port 80" as all web server requests.  Access to the segmented content can be scaled exponentially through the use of standardized web caches.  Together, these benefits represent a vast reduction in operating and publishing costs versus RTP/RTSP-based systems.

20.    The ABS Inventors' improvements to streaming succeeded where others tried and failed.  During the late 1990s, established streaming companies, including RealNetworks, Adobe, Microsoft, and Apple, separately attempted to develop a successful multiple bitrate streaming platform by using proprietary implementations of the RTP/RTSP standards.  None of these systems succeeded at making bitrate switching consistently and actually work over the Internet.

## ABS PATENTS SELL FOR $45 MILLION

21.    DISH and its affiliated companies are a leading provider of satellite TV and Internet streaming services, employing approximately 16,000 people and serving nearly 13 million subscribers in the United States.  It is a leading investor and innovator in infrastructure and technologies that will meet the personalized needs of its increasingly diverse pool of customers.  Since its founding, DISH and its affiliated companies have invested millions in research and development and acquisition of novel technologies that will resolve long-felt problems and needs across its industry.

22.    As the public continues to increasingly rely on the Internet for its informational and entertainment needs, one such problem into which DISH and its affiliated companies have dedicated great time and resources is improving the quality of streaming media. The specific entities that implement and own the technology covered by MOVE's patent portfolio have undergone significant evolution as these entities improve upon ABS and advance reliable delivery of high-resolution content over the Internet.

23.    DISH's recent investments in ABS have already proven a success.  ABS is one of the primary contributors to Sling TV's popularity.  Sling TV L.L.C. is DISH and its affiliated companies' main Internet content provider, offering programming to numerous Internet streaming devices.  Since the launch of Sling TV in the beginning of 2015, Sling TV has grown to over two million subscribers, who are now receiving a video playback experience comparable to cable or satellite.

## UNIVISION'S PRODUCTS AND SERVICES INFRINGE THE ABS PATENTS

24.    Univision has been and is now directly infringing and/or indirectly infringing the ABS Patents.

25.     On information and belief, Univision is a distributor of content via the Internet and more specifically a distributor of Spanish language content.  Exhibit E.  Since 2018, Univision makes, uses, sells, and offers for sale in the United States its own branded streaming channel whose products and services infringe the ABS Patents.  These infringing products include, without limitation, Univision NOW, the Univision app, and Univision Deportes services and related applications ("Univision NOW").

26.     On information and belief, the Univision NOW service and related applications is a "digital video subscription service offering a live stream of Univision and UniMás and includes live sporting events, specials, series, and streams from local stations in select markets.  Subscribers can instantly watch programs from the past 3 days (72 hours) of the live stream using the program guide, and can watch hundreds of primetime and library shows on demand."  *Id.*  The Univision and Univision Deportes services and related applications "offer viewers live streams / on demand content."  *Id.*  Here is an example of the Univision NOW service and related applications using a desktop platform:



## CLAIMS FOR RELIEF
## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 7,818,444

### DIRECT INFRINGEMENT

27.    DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1-26 of the Complaint as if fully set forth herein.

28.    On information and belief, Univision directly infringes, literally and/or under the doctrine of equivalents, at least claim 24 of the '444 Patent, which recites:

A method for multi-bitrate video and/or audio content streaming, the method comprising:

capturing a single video;

segmenting the single video and generating a plurality of sequential raw streamlets that collectively store data to playback the entire video and that individually store data to playback only a portion that starts at a unique time index and whose duration is less than the entire duration of the corresponding video;

encoding each raw streamlet to generate, for each of said raw streamlets, a set including an encoded streamlet for each bitrate supported by the multi-bitrate content streaming, wherein each of the encoded streamlets in each of the sets is stored as a separate content file, wherein the encoded streamlets within each of the sets have the same time index as their corresponding raw streamlet such that the encoded streamlets of the same set independently yield on playback the same portion of the single video, wherein the separate content files within each of the sets are independently requestable by end user stations, and wherein shifts between the different bit rates are made at the time indexes during streaming of the single video;

receiving requests from the end user stations over the Internet for different ones of the separate content files from different ones of the sets; and

transmitting the requested ones of the separate content files to the requesting one of the end user stations, wherein each of the end user stations initiate each of the shifts between the different bit rates during streaming of the single video through a request for the separate content file storing a different bit rate one of the encoded streamlets for a subsequent one of the time indexes.

Univision NOW receives segments of selected video program for playback of programming over a network connection. Univision NOW adapts requests for segments from a set of segments with the same content but varying quality based upon the quality of the network connection. Exhibit F to this Complaint is a claim chart that includes a more detailed infringement analysis of Univision NOW.[1]

29.     For many years, DISH has been a satellite carrier and through Sling TV has been an Over the Top ("OTT") delivery company. OTT refers to content delivered via the Internet rather than delivery via satellite or cable. DISH carried Univision content for many years and as a content provider to DISH, Univision is well aware of DISH's operations, and in particular, is well aware of DISH's OTT service and technology including Sling TV. Without disclosing the specifics of any DISH / Univision content agreement, DISH carried Univision licensed content on both its satellite and Sling TV services and paid Univision based on that carriage. Thus, Univision is well aware that DISH has deployed an OTT system, since it charged DISH for the right to deliver Univision content on that system.

30.     On information and belief, only recently in May of 2018 did Univision began providing a competing OTT service. In recent negotiations with DISH regarding future carriage of Univision content, Univision was put on notice of its infringement of the ABS Patents on July 25, 2018, and warned that further use required a license. Subsequent to that warning, Univision continued to provide OTT service in the U.S. using the ABS technology claimed in the ABS Patents and continued to offer and maintained the same service that DISH warned was

---

[1]     DISH notes that Exhibits F and H–I, *see infra*, are based exclusively on publicly available information, and without the benefit of any Court claim construction. Accordingly, for each Count below, DISH reserves the right to supplement, amend or modify the analysis as warranted in light of additional facts, claim construction, or other developments. DISH further reserves the right to add additional claims as the case progresses.

infringing.  Univision continues to provide Univision NOW with full knowledge and disregard of the ABS Patents, including the '444 Patent.

31.     Univision possesses knowledge of, and is aware of, the '444 Patent, or became aware of this patent at the time of filing this lawsuit.

32.     On information and belief, Univision intends to, and continues to intend to, directly infringe one or more claims of the '444 Patent through the sale of Univision NOW.

33.     On information and belief, Univision knew or should have known of the '444 Patent and its infringement of the '444 Patent, or at least learned of it by way of the Complaint, and has acted and continues to act, in an egregious and wanton manner by infringing the '444 Patent.

34.     On information and belief, despite knowing that its actions constituted infringement of the '444 Patent and/or despite knowing that there was a high likelihood that its actions constituted infringement of the patent, Univision nevertheless continued its infringing actions, and continues to make, use, and sell Univision NOW.

35.     Univision's acts of infringement have injured and damaged DISH and will continue to injure and damage DISH.

36.     Univision's actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.  Upon information and belief, Univision will continue these infringing acts unless enjoined by this Court.

## INDIRECT INFRINGEMENT BY INDUCEMENT

37.     DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1-36 of the Complaint as if fully set forth herein.

38.     Univision is liable for inducing infringement of the '444 Patent under 35 U.S.C. § 271(b) by having knowledge of the '444 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '444 Patent, with specific intent, by its customers.

39.     Specifically, Univision actively induces infringement of the '444 Patent by, *inter alia*, training its customers on the use of Univision NOW and/or promotion and/or sales of Univision NOW including Univision NOW, the Univision app, and Univision Deportes services and related applications to Univision's customers including users and subscribers for implementing adaptive-rate content streaming as claimed in the '444 Patent.

40.     Univision's customers directly infringe the '444 Patent by using Univision NOW.

41.     For example, Univision actively induces infringement of the '444 Patent, because Univision has knowledge that Univision NOW customers including users and subscribers use Univision's infringing Univision NOW service in the United States, and because Univision encourages such acts resulting in direct patent infringement, by, inter alia, training, promotion, and/or sales of Univision NOW to customers for their use of adaptive-rate content streaming as claimed in the '444 Patent.  *See* Exhibit E (answering questions such as, "How do I starting watching live TV?" and "What devices can I use to stream Univision NOW?") (last visited Jan. 24, 2019).

42.     On information and belief, Univision intends to, and continues to intend to, indirectly infringe the '444 Patent through inducement of the use of Univision NOW.

43.     The adaptive-rate content streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe, and DISH,

since its acquisition and continuing development of MOVE's patent portfolio.  On information and belief, as a provider of streamed content, Univision monitored developments of adaptive-rate content streaming technology, including DISH's ABS technology and knew, or at the very least, should have known, about the issuance of the '444 Patent.

44.     On information and belief, Univision knew or should have known of the '444 Patent, as explained in Paragraphs 29–30, and has acted, and continues to act, in an egregious and wanton manner by infringing the '444 Patent.

45.     On information and belief, despite knowing that its actions constituted inducement infringement of the '444 Patent and/or despite knowing that there was a high likelihood that its actions constituted inducement infringement of the patent, Univision nevertheless continued its infringing actions, and continues to make, use, and sell Univision NOW.

46.     Univision continues to provide Univision NOW with full knowledge and disregard of the ABS Patents, including the '444 Patent.

47.     Univision's acts of induced infringement have injured and damaged DISH and will continue to injure and damage DISH.

48.     Univision's actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.  Upon information and belief, Univision will continue these infringing acts unless enjoined by this Court.

**INDIRECT INFRINGEMENT BY CONTRIBUTORY INFRINGEMENT**

49.     DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1-48 of the Complaint as if fully set forth herein.

50.     Univision is liable for contributory infringement of the '444 Patent under 35 U.S.C § 271(c) by having sold or offered to sell, and continuing to sell or offer for sale Univision NOW within the United States because Univision NOW constitutes a material part of the invention embodied in the '444 Patent, which Univision knows to be especially made and/or especially adapted for use in infringement of the '444 Patent, and which is not a staple article or commodity of commerce suitable for substantial non-infringing use.

51.     Univision is liable for contributory infringement by having knowledge of the '444 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '444 Patent by its customers including users and subscribers who use Univision NOW.

52.     Specifically, Univision contributes to infringement of the '444 Patent by, inter alia, promotion, and/or sales of the infringing accused products and services to Univision's customers including users and subscribers for their use of adaptive-rate content streaming as claimed in the '444 Patent.  Those customers directly infringe the '444 Patent by using Univision NOW.

53.     For example, Univision is liable for contributory infringement by having knowledge of the '444 Patent, as explained in Paragraphs 29–30, and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, Univision NOW customers including users and subscribers to directly infringe the '444 Patent by using Univision NOW in the United States.

54.     The adaptive-rate content streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe, and DISH, since its acquisition and continuing development of MOVE's patent portfolio.  On information

and belief, as a provider of streamed content, Univision would have monitored developments of adaptive-rate content streaming technology, including DISH's ABS technology and knew, or at the very least, should have known, about the issuance of the '444 Patent.

55.     Univision continues to provide Univision NOW with full knowledge and disregard of the ABS Patents, including the '444 Patent.

56.     Univision's past and ongoing infringement of the '444 Patent has and will continue to irreparably harm DISH.

57.     Univision's past and ongoing infringement of the '444 Patent has and will continue to cause DISH damages.

58.     Univision's past and ongoing infringement of the '444 Patent, upon information and belief, has been knowing and willful.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 8,402,156

### DIRECT INFRINGEMENT

59.     DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1-58 of the Complaint as if fully set forth herein.

60.     On information and belief, Univision directly infringes, literally and/or under the doctrine of equivalents, at least claim 15 of the '156 Patent, which recites:

> A method for adaptive-rate content streaming videos for playback on a content player on an end user station, the method comprising:
>
> receiving a selected one of the videos for generating streamlets for adaptive-rate content streaming; and
>
> creating a plurality of different copies of the same selected video, wherein each of the different copies is encoded at a different bit rate and is divided into a plurality of streamlets that collectively store data to playback the entire video but that individually store data to playback only a portion that starts at a unique time index and whose duration is less than the entire duration of the selected

video, wherein the time indexes of the streamlets are the same for the different copies such that streamlets with the same time indexes form the different copies independently yield the same portions of the selected video, and wherein each of the streamlets of each of the pluralities is a separate content file that is independently playable by the end user station to thereby allow the end user station to initiate shifts in playback quality during streaming of the selected video through requests for separate content files storing different playback qualities of the encoded streamlets for subsequent ones of the time indexes.

Univision NOW receives segments of selected video program for playback of programming over a network connection. Univision NOW adapts requests for segments from a set of segments with the same content but varying quality based upon the quality of the network connection. Exhibit G to this Complaint is a claim chart with a more detailed infringement analysis of Univision NOW.

61.     Univision possesses knowledge of, and is aware of, the '156 Patent, or became aware of this patent at the time of filing this lawsuit.

62.     On information and belief, Univision intends to, and continues to intend to, directly infringe one or more claims of the '156 Patent through the sale of Univision NOW.

63.     On information and belief, Univision knew or should have known of the '156 Patent and its infringement of the '156 Patent, or at least learned of it by way of the Complaint, and has acted and continues to act, in an egregious and wanton manner by infringing the '156 Patent.

64.     On information and belief, despite knowing that its actions constituted infringement of the '156 Patent and/or despite knowing that there was a high likelihood that its actions constituted infringement of the patent, Univision nevertheless continued its infringing actions, and continues to make, use, and sell Univision NOW.

65.     Univision's acts of infringement have injured and damaged DISH and will continue to injure and damage DISH.

66.     Univision's actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.   Upon information and belief, Univision will continue these infringing acts unless enjoined by this Court.

## INDIRECT INFRINGEMENT BY INDUCEMENT

67.     DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1-66 of the Complaint as if fully set forth herein.

68.     Univision is liable for inducing infringement of the '156 Patent under 35 U.S.C. § 271(b) by having knowledge of the '156 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '156 Patent, with specific intent, by its customers.

69.     Specifically, Univision actively induces infringement of the '156 Patent by, inter alia, training its customers on the use of Univision NOW and/or promotion and/or sales of Univision NOW including Univision NOW, the Univision app, and Univision Deportes services and related applications to Univision's customers including users and subscribers for implementing adaptive-rate content streaming as claimed in the '156 Patent.

70.     Univision's customers directly infringe the '156 Patent by using Univision NOW.

71.     For example, Univision actively induces infringement of the '156 Patent, because Univision has knowledge that Univision NOW customers including users and subscribers use Univision's infringing Univision NOW service in the United States, and because

Univision encourages such acts resulting in direct patent infringement, by, *inter alia*, training, promotion, and/or sales of Univision NOW to customers for their use of adaptive-rate content streaming as claimed in the '156 Patent. *See* Exhibit E (answering questions such as, "How do I starting watching live TV?" and "What devices can I use to stream Univision NOW?") (last visited Jan. 24, 2019).

72.     On information and belief, Univision intends to, and continues to intend to, indirectly infringe the '156 Patent through inducement of the use of Univision NOW.

73.     The adaptive-rate content streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe, and DISH, since its acquisition and continuing development of MOVE's patent portfolio. On information and belief, as a provider of streamed content, Univision monitored developments of adaptive-rate content streaming technology, including DISH's ABS technology and knew, or at the very least, should have known, about the issuance of the '156 Patent.

74.     On information and belief, Univision knew or should have known of the '156 Patent, as explained in Paragraphs 29-30, and has acted, and continues to act, in an egregious and wanton manner by infringing the '156 Patent.

75.     On information and belief, despite knowing that its actions constituted inducement infringement of the '156 Patent and/or despite knowing that there was a high likelihood that its actions constituted inducement infringement of the patent, Univision nevertheless continued its infringing actions, and continues to make, use, and sell Univision NOW.

76.     Univision continues to provide Univision NOW with full knowledge and disregard of the ABS Patents, including the '156 Patent.

77.     Univision's acts of induced infringement have injured and damaged DISH and will continue to injure and damage DISH.

78.     Univision's actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.   Upon information and belief, Univision will continue these infringing acts unless enjoined by this Court.

## INDIRECT INFRINGEMENT BY CONTRIBUTORY INFRINGEMENT

79.     DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1-78 of the Complaint as if fully set forth herein.

80.     Univision is liable for contributory infringement of the '156 Patent under 35 U.S.C § 271(c) by having sold or offered to sell, and continuing to sell or offer for sale Univision NOW within the United States because Univision NOW constitutes a material part of the invention embodied in the '156 Patent, which Univision knows to be especially made and/or especially adapted for use in infringement of the '156 Patent, and which is not a staple article or commodity of commerce suitable for substantial non-infringing use.

81.     Univision is liable for contributory infringement by having knowledge of the '156 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '156 Patent by its customers including users and subscribers who use Univision NOW.

82.     Specifically, Univision contributes to infringement of the '156 Patent by, inter alia, promotion, and/or sales of the infringing accused products and services to Univision's customers including users and subscribers for their use of adaptive-rate content streaming as

claimed in the '156 Patent.  Those customers directly infringe the '156 Patent by using Univision NOW.

83.     For example, Univision is liable for contributory infringement by having knowledge of the '156 Patent, as explained in Paragraphs 29-30, and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, Univision NOW customers including users and subscribers to directly infringe the '156 Patent by using Univision NOW in the United States.

84.     The adaptive-rate content streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe, and DISH, since its acquisition and continuing development of MOVE's patent portfolio.  On information and belief, as a provider of streamed content, Univision would have monitored developments of adaptive-rate content streaming technology, including DISH's ABS technology and knew, or at the very least, should have known, about the issuance of the '156 Patent.

85.     Univision continues to provide Univision NOW with full knowledge and disregard of the ABS Patents, including the '156 Patent.

86.     Univision's past and ongoing infringement of the '156 Patent has and will continue to irreparably harm DISH.

87.     Univision's past and ongoing infringement of the '156 Patent has and will continue to cause DISH damages.

88.     Univision's past and ongoing infringement of the '156 Patent, upon information and belief, has been knowing and willful.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 9,071,668

### DIRECT INFRINGEMENT

89.     DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1-88 of the Complaint as if fully set forth herein.

90.     On information and belief, Univision directly infringes, literally and/or under the doctrine of equivalents, at least claim 16 of the '668 Patent, which recites:

> A method executable by a content player on an end user device to obtain a stream of a selected video program for playback by the content player, the method comprising:
>
> requesting the stream of the selected video program via a network connection to a video server, wherein the video server accesses a plurality of different copies of the same selected video each encoded at a different bit rate and each divided into a plurality of segments that collectively store data to playback the entire video but that individually store data to playback only a portion that starts at a unique time index and whose duration is less than the entire playback duration of the selected video, wherein the time indexes of the segments are the same for the different copies such that the segments with the same time indexes from the different copies independently yield the same portions of the selected video, and wherein each of the segments of each of the pluralities is a separate content file that is independently playable by the end user device, wherein the requesting comprises the content player placing, for a set of sequential ones of the time indexes, segment requests over the network connection to the video server to thereby retrieve the separate segments from at least one of the different copies storing the portions of the single video according to the set of time indexes;
>
> receiving the separate segments from the video server at the content player via the network connection; and
>
> adapting subsequent segment requests placed by the content player to the video server based upon successive determinations by the content player to shift the playback quality to a higher or lower quality one of the different copies of the same selected video, wherein the shifts in playback quality occur at the time indexes.

Univision NOW receives segments of selected video program for playback of programming over a network connection.  Univision NOW adapts requests for segments from a set of segments with the same content but varying quality based upon the quality of the network connection. Exhibit H to this Complaint is a claim chart with a more detailed infringement analysis of Univision NOW.

91.     As explained in Paragraphs 29-30, Univision possesses knowledge of, and is aware of, the '668 Patent, or became aware of this patent as a content provider to DISH and because Univision has received notice of infringement of the '668 Patent.

92.     On information and belief, Univision intends to, and continues to intend to, directly infringe one or more claims of the '668 Patent through the sale of Univision NOW.

93.     On information and belief, Univision knew or should have known of the '668 Patent and its infringement of the '668 Patent, or at least learned of it by way of the Complaint, and has acted and continues to act, in an egregious and wanton manner by infringing the '668 Patent.

94.     On information and belief, despite knowing that its actions constituted infringement of the '668 Patent and/or despite knowing that there was a high likelihood that its actions constituted infringement of the patent, Univision nevertheless continued its infringing actions, and continues to make, use, and sell Univision NOW.

95.     Univision's acts of infringement have injured and damaged DISH and will continue to injure and damage DISH.

96.     Univision's actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the

market.   Upon information and belief, Univision will continue these infringing acts unless enjoined by this Court.

**INDIRECT INFRINGEMENT BY INDUCEMENT**

97.     DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1-96 of the Complaint as if fully set forth herein.

98.     Univision is liable for inducing infringement of the '668 Patent under 35 U.S.C. § 271(b) by having knowledge of the '668 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '668 Patent, with specific intent, by its customers.

99.     Specifically, Univision actively induces infringement of the '668 Patent by, inter alia, training its customers on the use of Univision NOW and/or promotion and/or sales of Univision NOW including Univision NOW, the Univision app, and Univision Deportes services and related applications to Univision's customers including users and subscribers for implementing adaptive-rate content streaming as claimed in the '668 Patent.

100.    Univision's customers directly infringe the '668 Patent by using Univision NOW.

101.    For example, Univision actively induces infringement of the '668 Patent, because Univision has knowledge that Univision NOW customers including users and subscribers use Univision's infringing Univision NOW service in the United States, and because Univision encourages such acts resulting in direct patent infringement, by, inter alia, training, promotion, and/or sales of Univision NOW to customers for their use of adaptive-rate content streaming as claimed in the '668 Patent.  *See* Exhibit E (answering questions such as, "How do I

starting watching live TV?" and "What devices can I use to stream Univision NOW?") (last visited Jan. 24, 2019).

102.    On information and belief, Univision intends to, and continues to intend to, indirectly infringe the '668 Patent through inducement of the use of Univision NOW.

103.    The adaptive-rate content streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe, and DISH, since its acquisition and continuing development of MOVE's patent portfolio.  On information and belief, as a provider of streamed content, Univision monitored developments of adaptive-rate content streaming technology, including DISH's ABS technology and knew, or at the very least, should have known, about the issuance of the '668 Patent.

104.    On information and belief, Univision knew or should have known of the '668 Patent, as explained in Paragraphs 29-30, and has acted, and continues to act, in an egregious and wanton manner by infringing the '668 Patent.

105.    On information and belief, despite knowing that its actions constituted inducement infringement of the '668 Patent and/or despite knowing that there was a high likelihood that its actions constituted inducement infringement of the patent, Univision nevertheless continued its infringing actions, and continues to make, use, and sell Univision NOW.

106.    Univision continues to provide Univision NOW with full knowledge and disregard of the ABS Patents, including the '668 Patent.

107.    Univision's acts of induced infringement have injured and damaged DISH and will continue to injure and damage DISH.

108.     Univision's actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.  Upon information and belief, Univision will continue these infringing acts unless enjoined by this Court.

## INDIRECT INFRINGEMENT BY CONTRIBUTORY INFRINGEMENT

109.     DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1-108 of the Complaint as if fully set forth herein.

110.     Univision is liable for contributory infringement of the '668 Patent under 35 U.S.C § 271(c) by having sold or offered to sell, and continuing to sell or offer for sale Univision NOW within the United States because Univision NOW constitutes a material part of the invention embodied in the '668 Patent, which Univision knows to be especially made and/or especially adapted for use in infringement of the '668 Patent, and which is not a staple article or commodity of commerce suitable for substantial non-infringing use.

111.     Univision is liable for contributory infringement by having knowledge of the '668 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '668 Patent by its customers including users and subscribers who use Univision NOW.

112.     Specifically, Univision contributes to infringement of the '668 Patent by, inter alia, promotion, and/or sales of the infringing accused products and services to Univision's customers including users and subscribers for their use of adaptive-rate content streaming as claimed in the '668 Patent.  Those customers directly infringe the '668 Patent by using Univision NOW.

113.    For example, Univision is liable for contributory infringement by having knowledge of the '668 Patent, as explained in Paragraphs 29-30, and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, Univision NOW customers including users and subscribers to directly infringe the '668 Patent by using Univision NOW in the United States.

114.    The adaptive-rate content streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe, and DISH, since its acquisition and continuing development of MOVE's patent portfolio.  On information and belief, as a provider of streamed content, Univision would have monitored developments of adaptive-rate content streaming technology, including DISH's ABS technology and knew, or at the very least, should have known, about the issuance of the '668 Patent.

115.    Univision continues to provide Univision NOW with full knowledge and disregard of the ABS Patents, including the '668 Patent.

116.    Univision's past and ongoing infringement of the '668 Patent has and will continue to irreparably harm DISH.

117.    Univision's past and ongoing infringement of the '668 Patent has and will continue to cause DISH damages.

118.    Univision's past and ongoing infringement of the '668 Patent, upon information and belief, has been knowing and willful.

## COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 9,407,564

### DIRECT INFRINGEMENT

119.    DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1-118 of the Complaint as if fully set forth herein.

120.    On information and belief, Univision directly infringes, literally and/or under the doctrine of equivalents, at least claim 8 of the '564 Patent, which recites:

A method executable by an end user station to present rate-adaptive streams received via at least one transmission control protocol (TCP) connection with a server over a network, the method comprising;

streaming, by a media player operating on the end user station, a video from the server via the at least one TCP connection over the network, wherein multiple different copies of the video encoded at different bit rates are stored as multiple sets of files on the server, wherein each of the files yields a different portion of the video on playback, wherein the files across the different copies yield the same portions of the video on playback, and wherein each of the files comprises a time index such that the files whose playback is the same portion of the video for each of the different copies have the same time index in relation to the beginning of the video, and wherein the streaming comprises:

requesting by the media player a plurality of sequential files of one of the copies from the server based on the time indexes;

automatically requesting by the media player from the server subsequent portions of the video by requesting for each such portion one of the files from one of the copies dependent upon successive determinations by the media player to shift the playback quality to a higher or lower quality one of the different copies, the automatically requesting including repeatedly generating a factor indicative of the current ability to sustain the streaming of the video using the files from different ones of the copies, wherein the factor relates to the performance of the network; and

making the successive determinations to shift the playback quality based on the factor to achieve continuous playback of the video using the files of the highest quality one of the copies determined sustainable at that time, wherein the making the successive determinations to shift comprises upshifting to a higher quality one of the different copies when the at least one factor is greater than a first threshold and downshifting to a lower quality one of the different copies when the at least one factor is less than a second threshold; and

presenting the video by playing back the requested media files with the media player on the end user station in order of ascending playback time.

Univision NOW receives segments of selected video program for playback of programming over a network connection.  Univision NOW adapts requests for segments from a set of segments with the same content but varying quality based upon the quality of the network connection.  Exhibit I to this Complaint is a claim chart with a more detailed infringement analysis of Univision NOW.

121.    Univision possesses knowledge of, and is aware of, the '564 Patent, or became aware of this patent at the time of filing this lawsuit.

122.    On information and belief, Univision intends to, and continues to intend to, directly infringe one or more claims of the '564 Patent through the sale of Univision NOW.

123.    On information and belief, Univision knew or should have known of the '564 Patent and its infringement of the '564 Patent, or at least learned of it by way of the Complaint, and has acted and continues to act, in an egregious and wanton manner by infringing the '564 Patent.

124.    On information and belief, despite knowing that its actions constituted infringement of the '564 Patent and/or despite knowing that there was a high likelihood that its actions constituted infringement of the patent, Univision nevertheless continued its infringing actions, and continues to make, use, and sell Univision NOW.

125.    Univision's acts of infringement have injured and damaged DISH and will continue to injure and damage DISH.

126.    Univision's actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the market.  Upon information and belief, Univision will continue these infringing acts unless enjoined by this Court.

## INDIRECT INFRINGEMENT BY INDUCEMENT

127.    DISH re-alleges and incorporates herein by reference the allegations contained in Paragraphs 1-126 of the Complaint as if fully set forth herein.

128.    Univision is liable for inducing infringement of the '564 Patent under 35 U.S.C. § 271(b) by having knowledge of the '564 Patent and knowingly causing or intending to cause, and continuing to knowingly cause or intend to cause, direct infringement of the '564 Patent, with specific intent, by its customers.

129.    Specifically, Univision actively induces infringement of the '564 Patent by, inter alia, training its customers on the use of Univision NOW and/or promotion and/or sales of Univision NOW including Univision NOW, the Univision app, and Univision Deportes services and related applications to Univision's customers including users and subscribers for implementing adaptive-rate content streaming as claimed in the '564 Patent.

130.    Univision's customers directly infringe the '564 Patent by using Univision NOW.

131.    For example, Univision actively induces infringement of the '564 Patent, because Univision has knowledge that Univision NOW customers including users and subscribers use Univision's infringing Univision NOW service in the United States, and because Univision encourages such acts resulting in direct patent infringement, by, inter alia, training, promotion, and/or sales of Univision NOW to customers for their use of adaptive-rate content streaming as claimed in the '564 Patent.  *See* Exhibit E (answering questions such as, "How do I starting watching live TV?" and "What devices can I use to stream Univision NOW?") (last visited Jan. 24, 2019).

132.     On information and belief, Univision intends to, and continues to intend to, indirectly infringe the '564 Patent through inducement of the use of Univision NOW.

133.     The adaptive-rate content streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe, and DISH, since its acquisition and continuing development of MOVE's patent portfolio.  On information and belief, as a provider of streamed content, Univision monitored developments of adaptive-rate content streaming technology, including DISH's ABS technology and knew, or at the very least, should have known, about the issuance of the '564 Patent.

134.     On information and belief, Univision knew or should have known of the '564 Patent, as explained in Paragraphs 29-30, and has acted, and continues to act, in an egregious and wanton manner by infringing the '564 Patent.

135.     On information and belief, despite knowing that its actions constituted inducement infringement of the '564 Patent and/or despite knowing that there was a high likelihood that its actions constituted inducement infringement of the patent, Univision nevertheless continued its infringing actions, and continues to make, use, and sell Univision NOW.

136.     Univision continues to provide Univision NOW with full knowledge and disregard of the ABS Patents, including the '564 Patent.

137.     Univision's acts of induced infringement have injured and damaged DISH and will continue to injure and damage DISH.

138.     Univision's actions have caused DISH to suffer irreparable harm resulting from the loss of its lawful patent rights and the loss of its ability to exclude others from the

market.   Upon  information  and  belief,  Univision  will  continue  these  infringing  acts  unless

enjoined by this Court.

## INDIRECT INFRINGEMENT BY CONTRIBUTORY INFRINGEMENT

139.    DISH  re-alleges  and  incorporates  herein  by  reference  the  allegations

contained in Paragraphs 1-138 of the Complaint as if fully set forth herein.

140.    Univision is liable for contributory infringement of the '564 Patent under

35 U.S.C § 271(c) by having sold or offered to sell, and continuing to sell or offer for sale

Univision NOW within the United States because Univision NOW constitutes a material part of

the invention embodied in the '564 Patent, which Univision knows to be especially made and/or

especially adapted for use in infringement of the '564 Patent, and which is not a staple article or

commodity of commerce suitable for substantial non-infringing use.

141.    Univision is liable for contributory infringement by having knowledge of

the '564 Patent and knowingly causing or intending to cause, and continuing to knowingly cause

or intend to cause, direct infringement of the '564 Patent by its customers including users and

subscribers who use Univision NOW.

142.    Specifically, Univision contributes to infringement of the '564 Patent by,

inter alia, promotion, and/or sales of the infringing accused products and services to Univision's

customers including users and subscribers for their use of adaptive-rate content streaming as

claimed in the '564 Patent.  Those customers directly infringe the '564 Patent by using Univision

NOW.

143.    For example, Univision is liable for contributory infringement by having

knowledge of the '564 Patent, as explained in Paragraphs 29-30, and knowingly causing or

intending to cause, and continuing to knowingly cause or intend to cause, Univision NOW

customers including users and subscribers to directly infringe the '564 Patent by using Univision NOW in the United States.

144.　The adaptive-rate content streaming technology market is a small and well-defined market with a few major players, including Apple, Microsoft, Adobe, and DISH, since its acquisition and continuing development of MOVE's patent portfolio. On information and belief, as a provider of streamed content, Univision would have monitored developments of adaptive-rate content streaming technology, including DISH's ABS technology and knew, or at the very least, should have known, about the issuance of the '564 Patent.

145.　Univision continues to provide Univision NOW with full knowledge and disregard of the ABS Patents, including the '564 Patent.

146.　Univision's past and ongoing infringement of the '564 Patent has and will continue to irreparably harm DISH.

147.　Univision's past and ongoing infringement of the '564 Patent has and will continue to cause DISH damages.

148.　Univision's past and ongoing infringement of the '564 Patent, upon information and belief, has been knowing and willful.

### JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs hereby request a trial by jury of all issues so triable.

### PRAYER FOR RELIEF

WHEREFORE, DISH respectfully requests that this Court enter:

A.      A judgement in favor of DISH that Univision has infringed the ABS Patents, directly, jointly, and/or indirectly by way of inducing and/or contributing to the infringement of the ABS Patents;

B.      An order of this Court permanently enjoining Univision and its officers, directors, agents, affiliates, employees, divisions, branches, subsidiaries, parents, and all others in active concert therewith from infringing, including inducing the infringement of, or contributing to the infringement of, the ABS Patents;

C.      A judgment and order requiring Univision to pay DISH its damages, costs, expenses, and pre-judgment and post-judgment interest for Univision's infringement of the ABS Patents, as provided under 35 U.S.C. § 284;

D.      A judgment and order requiring Univision to pay treble damages as provided under 35 U.S.C. § 284;

E.      A judgment and order finding this case exceptional under 35 U.S.C. § 285 and awarding DISH its costs, disbursements, and attorneys' fees in connection with this action; and

F.      Such other and further relief to which DISH may show itself to be entitled and/or as the Court may deem just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

_____

OF COUNSEL:

G. Hopkins Guy, III
BAKER BOTTS L.L.P.
1001 Page Mill Road
Building One, Suite 200
Palo Alto, CA  94304
(650) 739-7500

Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com

*Attorneys for Plaintiffs*

Ali Dhanani
BAKER BOTTS L.L.P.
One Shell Plaza
San Francisco, CA  94111
(281) 250-2294

Jamie R. Lynn
BAKER BOTTS L.L.P.
The Warner
1299 Pennsylvania Avenue, NW
Washington, DC  20004
(202) 639-7700

January 25, 2019